RANDY S. GROSSMAN
United States Attorney
NICOLE E. BREDARIOL
MA Bar: 696484
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8419
Email: Nicole.Bredariol@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-CR-292- GPC |
| Plaintiff, | **UNITED STATES' OMNIBUS SENTENCING MEMORANDUM AS TO DEFENDANTS 5 - 10** |
| v. | |
| HECTOR LEONEL VALENCIA SEGOVIA (5), ALEXANDER JAVIER TOMALA POZO (6), ANTONIO ROBERTO CEDENO VALENCIA (7), GALO ROSARIO BAILON ALVIA (8), RAFAEL AURELIO CHERE GAZPAR (9), ULBIO GALO CHELE PLUA (10), | Date: June 6, 2022 Time: 8:30 a.m. |
| Defendants. | |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Nicole E. Bredariol, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to the following defendants: D5 (Hector Leonel Valencia Segovia), D6 (Alexander Javier Tomala Pozo), D7 (Antonio Roberto Cedeno Valencia), D8 (Galo Rosario Bailon Alvia), D9 (Rafael Aurelio Chere Gazpar), D10 (Ulbio Galo Chele Plua). This memorandum is based upon the files and records of the case.

# I. INTRODUCTION

Defendant 5: Hector Leonel Valencia Segovia (SEGOVIA), Defendant 6: Alexander Javier Tomala Pozo (POZO), Defendant 7: Antonio Roberto Cedeno Valencia) (CEDENO), Defendant 8: Galo Rosario Bailon Alvia (ALVIA), Defendant 9: Rafael Aurelio Chere Gazpar (GAZPAR), Defendant 10: Ulbio Galo Chele Plua (PLUA) (collectively "Defendants") are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503. A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill necessary for a crew of ten (10) men to transport cocaine on the high seas takes skill and experience. Engaging in a journey that will take days and requires navigating hundreds of miles on the ocean takes extensive preparation. Defendants relied on each other during this extended journey and worked together, utilizing their skill and acumen to try and achieve a significant reward – a payday. After taking into consideration the seriousness of the offense, including the level of skill and preparation required to transport approximately 1,836 kilograms of cocaine, and the remaining 3553(a) factors, the United States recommends 72 months' custody followed by 5 years' supervised release, no fine, and a $100 special assessment.

# II. STATEMENT OF FACTS

## A. The Crime

On December 6, 2020, a Coast Guard helicopter detected a Go-Fast Vessel (GFV) approximately 432 Nautical miles (NM) south of Isla Socorro, Mexico in international waters. The GFV was drifting and completely covered with a tarp. United States Coast Guard Cutter ACTIVE was nearby and diverted to intercept the GFV.

The United States Coast Guard launched a smallboat, with an embarked Coast Guard law enforcement team to interdict the GFV. The smallboat came alongside the GFV and gained control. The GFV was grey and white in color and had three outboard engines, each approximately 200 horsepower, numerous fuel barrels, and visible drug packages on deck. The boarding team conducted right of visit questioning. The questioning yielded no vessel name, no homeport, no registration number, and no painted on markings on the hull. The GFV was also not flying a physical flag and did not have registration documents. The boarding identified ten people onboard the GFV: Enrique Rafael AMARAL MEZA, William Salvador SANCHEZ GARCIA, Jesus Ernesto NAVARRO MORALES, Javier Montes CABRERA, Hector Leonel Valencia SEGOVIA, Alexander Javier Tomala POZO, Antonio Roberto CEDENO Valencia, Galo Rosario Bailon ALVIA, Rafael Aurelio Chere GAZPAR, and Ulbio Galo Chele PLUA. Defendant Enrique Rafael Amaral Meza was identified as the master of the vessel and he claimed Mexican nationality for the vessel. During the right of visit questioning a crewmember claimed the last port of call was Colombia on or about November 21, 2020, and the next port of call was Nayarit, Mexico. The master claimed the purpose of the voyage was to meet an Ecuadorian vessel to onload narcotics. The Coast Guard enacted the US/MX OPCEN to OPCEN SOP (NAMSI) and conducted a forms exchange with Mexico. Mexico could neither confirm nor deny the nationality of the GFV, so it was treated as without nationality and subject to U.S. jurisdiction.

During the boarding the boarding team recovered approximately 92 packages of cocaine, at an approximate weight of 1,836 kilograms (4,039.2 pounds).






Defendants provided various explanations and statements regarding how they became involved in this drug trafficking event and their actions. Ultimately, agents discovered SEGOVIA, POZO, and CEDENO left on a drug laden GFV from Colombia/Ecuador approximately one - two weeks before they were interdicted by the Coast Guard. ALVIA, GAZPAR, and PLUA left on a second separate drug laden GFV around the same time from the same approximate location. Both drug laden GFV's were headed towards Mexico and had the cocaine hidden under a false bottom. During each

GFV's journey they rendezvoused with various other vessels for refueling of their GFV. The two GFV's then rendezvoused with a third GFV that originated from Mexico and contained defendants Enrique Rafael Amaral Meza, William Salvador Sanchez Garcia, Jesus Ernesto Navarro Morales, and Javier Montes Cabrera for an at sea transfer of the cocaine. Defendants worked together to pull up the false bottom on the two drug laden GFV's and extract the cocaine and transfer it to the third GFV that originated from Mexico. The third GFV that originated from Mexico was ultimately interdicted by the Coast Guard with all ten defendants onboard a few days after the at sea rendezvous. It traveled at night, and during the day would drift with a tarp covering it to evade detection. Defendants Enrique Rafael Amaral Meza, William Salvador Sanchez Garcia, Jesus Ernesto Navarro Morales, and Javier Montes Cabrera departed on the GFV from Mexico a few days before the interdiction and were supposed to complete the round trip to return to Mexico with the cocaine after the at sea rendezvous. After all the cocaine and all the Defendants were transferred to the GFV that left from Mexico the other two GFV's were sunk at sea. Defendants took turns driving the various GFVs.

**B. Defendants Statements**

During their presentence interviews each defendant stated or intimated that they were motivated to commit the instant offense out of financial necessity.

## III. THE GUIDELINES

## A. Calculation

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements nor any reductions for role. There is a two-level downward departure for safety valve, a two-level downward departure for a combination of circumstances, including each defendant's waiver of indictment during the judicial emergency, and a three-level downward departure for acceptance of responsibility. Defendant is in Criminal History Category I. The resulting guideline range is 108 to 135 months in custody. Pursuant to the plea agreement the United States is recommending 72 months in custody for each Defendant - a substantial variance of 36 months or

approximately a thirty three percent, or one third, reduction of the low end of the guideline range.

**B.    Government Recommendation**

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel. Maritime drug smuggling is a complicated endeavor. The evidence demonstrates the defendants coordinated an at sea voyage spanning hundreds of nautical miles to transport a vast amount of cocaine valued at tens of millions of dollars. Transporting cocaine on the high seas takes considerable skill and experience. That skill promised a significant reward. For Defendants that reward was monetary.

Second, this was a complicated smuggling venture for which Defendants preparation, expertise, experience, and efforts were critical. Each acted as more than a mere drug courier which this district often encounters for sentencing in land-based drug smuggling ventures. Maritime smuggling requires specialized skills, and men like Defendants are recruited because of their familiarity with the maritime environment. That required skill is evident in this case, where Defendants were discovered hundreds of miles from their home countries. Arriving to the interdiction location, over 400 NM from Mexico, required each to prepare to be away from home for an extended period of time, to help navigate the vessel over a multi-day journey spanning hundreds of miles, to complete multiple rendezvouses with refueling vessels in the middle of the ocean, and to complete a complicated at sea vessel rendezvous with three vessels. Over this extended time each was required to deal with all the difficulties that navigating on the high seas brings, including weather, sea state, and difficult communications. This requires expertise and experience and cannot be performed by just anyone. Unlike a simple drug courier who may only be responsible for drugs for a few hours and a few miles during a border crossing, this journey required Defendants to be responsible for the cocaine for hundreds of miles and days.

Third, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate in this case. The United States is not arguing for a navigator

enhancement. Defendants took turns navigating and driving the GFV. Defendants operated as a team, utilizing tremendous skill, training, and acumen as discussed. All ten were literally stuck in the same small boat, and equally culpable. Each Defendant is not less culpable than the average participant—let alone *substantially* less culpable. Defendants understood the scope of this crime, each was to take part in the transport of cocaine from Colombia/Ecuador to Mexico – either by bringing the cocaine on a vessel from Colombia, or rendezvousing with the cocaine laden vessel, transfer it to another vessel, and transport it to Mexico for further distribution. Defendants were involved in planning for and preparing for the criminal activity – traveling from their homes to the departure location, bringing changes of clothes, or identification documentation as necessary to allow themselves to be away from their homes for weeks at a time and also to allow them to return to their homes in South America had they successfully delivered the drugs to Mexico. Furthermore, during the journey each helped facilitate rendezvouses with multiple refueling vessels in the middle of the ocean. As one of ten men on this vessel in the middle of the high seas each Defendant was in control of the vessel. Finally, Defendants stood to benefit from the criminal activity, and as they stated engaged in this crime for financial reasons. Each Defendant participated extensively in the criminal activity, stood to benefit from it, and exercised discretion in performing the acts to further the criminal enterprise. This weights against a role reduction.

Fourth, Defendants were responsible for trafficking an astounding amount of cocaine – 1,836 kilograms which is almost two metric tons. While Defendants may claim each did not intend to come to the United States, each Defendant's role in transporting the cocaine in the GFV was critical to the success of the trafficking venture and it was foreseeable the cocaine was bound for the United States. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States it would have an approximate wholesale value of $39.4 million and retail value of $110 million. There is no doubt that

had this highly dangerous drug successfully made it to the United States it could have led to extensive harm.

Fifth, given the need to generally deter others, it is essential the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Only a significant sentence will discourage future potential traffickers from engaging in similar crimes. The incentive to make relatively large sums of money for trafficking drugs must be combated with the deterrence of significant sentences for engaging in this criminal activity. This is highlighted by Defendants' explanation that their motive to participate in the instant offense was monetary. There is a need to impose a sentence that adequately deters others from engaging in this criminal activity for the hopes of financial reward.

Sixth, the variance already recommended by the United States appropriately accounts for any variances based on the history and characteristics of the defendant or COVID-19. Defendants were entrusted to smuggle approximately 1,836 kg of cocaine hundreds of miles while operating far from land with some autonomy. Their sentence should reflect their extensive culpability.

## C.  Conclusion

Based on the 3553(a) factors a custodial sentence of 72 months, followed by 5 years' supervised release, no fine, and a $100 special assessment is appropriate for each of the Defendants.


DATED: May 31, 2022                Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Nicole E. Bredariol*
Nicole E. Bredariol
Special Assistant U.S. Attorney